Good morning and may it please the court. Evgeny Targuin from the office of the federal public defender for the appellant Jose Granados. I'll reserve two minutes for rebuttal please. All right watch your clock. The central issue in this case is whether police officers who stopped Mr. Granados because the light on his license plate was not working had reasonable suspicion that he was armed and presently dangerous and therefore could frisk him for a weapon. This court should hold they could not because there were no facts showing that he was armed and the facts showing dangerousness were not particularized to Mr. Granados at the time of the stop. In concluding otherwise this court made three errors. First it's finding that Mr. Granados movements and demeanor contribute to reasonable suspicion was wrong because it failed to account for facts that dispel the officer's suspicions. Second it's reasoning that the marijuana and the stop contribute to reasonable suspicion was contrary to this court's precedence. And third the court's last factor Mr. Granados' self-conviction was not sufficient for reasonable suspicion because it did not indicate that he was armed and there were no particularized facts showing that he was dangerous because of that conviction during this traffic stop. I will elaborate on those errors as I discuss the government's four factors for reasonable suspicion. First is Mr. Granados' behavior during the stop. Here the court should focus on the body cam videos. They show what happened and because the district court found that the officers exaggerated when they testified about Mr. Granados' behavior. The videos show that Mr. Granados was calm, polite, and compliant during the stop. In assessing this factor district court failed to count for facts that dispelled suspicion in two ways. First it identified a movement that Mr. Granados made as furtive but it was not a furtive movement. As the officer on the scene realized Mr. Granados was reaching for his cell phone. The video shows that Mr. Granados leaned forward at his cell phone was starting to lean back when officer Gomez who was at his passenger side window couldn't tell exactly what was going on so he tapped on the window of his and I didn't see that he was reaching for his cell phone on the floor that wasn't visible from the video. I think the central question is whether it was a movement that could indicate to the officers that he was armed and here the district court made two errors it only considered the facts that happened until officer Gomez tapped on the window and after that happened officer Gomez testified that he realized that Mr. Granados was getting his cell phone and he could see him afterwards being on his cell phone using his cell phone until officer Glenn arrived. So officer Gomez's behavior showed that he was not worried about that movement after Mr. Granados showed him that hey I was just getting my cell phone and under Thomas versus Dillard the district court had to consider all the facts including facts that dispelled the officers of suspicions and were known to the officers at the time that the frisk occurred and here the court's focus on only the facts up until the time the court was that that's the officer to tap on the window and that was the end of the deal for the district court that's this court's discussion of that is at er 99 to 104 and so the court failed to consider these facts that dispelled the officer's suspicion that Mr. Granados was not reaching for anything weird doing anything furtive but was doing a movement but was just getting his cell phone and the second way the court erred was in characterizing Mr. Granados as sweaty and therefore nervous during this traffic stop the question for the court was whether anything about how Mr. Granados presented himself would leave the officer to conclude that he had a weapon and here the video showed there was nothing like that he was not evasive he wasn't disobeying the orders and he was not unusually nervous when interacting with him he was behaving normally so the police officer had a different impression and he testified it was based on his experience and training uh and the supreme court has told us we can take that into account was it was it wrong to take that into account well i think first uh the the court found that the officers exaggerated so it's not exactly clear what it was that is to be taken into account but second of all this court has also drawn a distinction between the kinds of behaviors that the kind of behaviors and appearances that are normal in any kind of police interaction that are to be expected which is some level of nervousness and the kinds of behaviors that indicate a weapon which for movements that caused officers to actually react uh to the to those kinds of movements and the united states versus iuv this court explained that movement is not really furtive if an officer doesn't react to it uh in a way that's that's furtive i'm sorry i was just going to ask mr tuckman um i thought when the district court said that um it concluded that some of the officers testimony was exaggerated the district court was specifically referring to furtive movements not whether um uh mr granados was sweaty and so recall the body cam footage the officers said you're really sweaty why are you so sweaty and he was clearly reacting to how sweaty he perceived mr granados to be and i don't recall the district court saying that that was in any way exaggerated i think that the exaggeration finding shows that the officers were misleading the court about mr ganada's behavior so i think it can be read broader because the officers were trying to justify their actions in whatever way they could but on the sweaty uh point i think the court uh ignored mr ganada's corroborated explanation for why he was sweaty and it was not because he was nervous as he told the officers he's a janitor he had just finished a cleaning assignment he was on his way to a different cleaning assignment and corroborating that was he was in his work scrubs with his cleaning company's logo q on his work shirt and the court did not take into consideration that fact but i think uh the other point that the court conflated was the difference between furtive and fidgety movements and fidgety movements showing that a person is nervous and furtive movements as movements showing that a person is actually might have a weapon on them so in talking about that the officers exaggerated his movements i think that goes to they exaggerated how fidgety he was in the car which can also go to nervousness yeah so this is a case where um i'm just trying to we've had so many cases this week um did the officer admit that he um was searched granados pursuant to the san francisco police department's unconstitutional policy of uh frisking all detained people that's exactly right how does that play into the analysis uh i think it shows that it it undercuts the officer's testimony that he was doing uh anything in a way that caused them to actually search him because it's a it's a different i think it's a much harder case for us if there was none of this testimony harder to convince the court that they were exaggerating and it just confirms that there was nothing that he actually did that led to the search but these are after the fact justifications for a search that actually happened uh that was under this policy where they believe that they're required to search anyone who's been lawfully stopped and it's coming out of the car oh they have um but they have had probable cause to arrest mr granados based on their observations of smoke coming out of the windows the smell of marijuana the burning or the burnt marijuana cigarette in the car and if they did wouldn't they pat down have been inevitable at that point uh no your honor so first the government uh hasn't argued that they um in the district court they haven't tried to justify this search as something did they did they brief it but just not argued at the hearing so the government opposition was focused on that this the only relevant facts the only uh grounds they try to justify the search on were that uh mr granados was uh armed and dangerous and therefore it could allow the frisk and that they would have inevitably arrested him for this uh i believe pipe they found in his backpack uh so those were the two grounds they did not argue that they would have arrested him for any kind of uh marijuana offense and so under the inevitable discovery so first the argument is waived but the important point on the inevitable discovery doctrine uh is that the burden was on the government to prove by a preponderance of evidence that the officers would have exercised their discretion to actually arrest someone and and here again they they there's no evidence of that even if we don't consider that waiver at the suppression hearing they the officers did not testify that that would have happened and the facts suggest that they wouldn't um also there's not we have not conceded that there's probable cause and i think there's uh arguments that there was not probable cause to arrest them and further it's not clear whether any of these uh marijuana offenses are something that a person will be arrested for rather than just issued a citation for example the having an open container of the marijuana and as i argued the uh federal offense which again government's never argued and officers likely didn't have authority to do anything about that but here there's no there's no uh argument and there's no evidence they actually could have arrested mr granados for for those particular offenses and that's important because it's the inevitable discovery context so the government has to show that there actually is authority to arrest in that situation if i may yes you have one other question so i've looked at the video too and i saw a cable car that seems at odds with the this notion that this could be a this was a high crime area where exactly was it it's the top of this is a high crime area i think both because the fact that in support and also officer gun who's the only one that testified to this being high crime area was someone who the court found to exaggerate i see that actually past time i believe yes you are but i'll give you some time for a rebuttal and we'll we'll hear from miss parkman no i'm sorry that's wrong that's you i'm james good morning your honors may it please the court i'm assistant u.s attorney alexis james representing the government in this matter the court should affirm the district court's finding that the officers had reasonable suspicion to frisk the defendant the defendant's violent criminal history the sweatiness during a night time a cold night time as well as the repeated movements even after being warned to stop including wiping of the palms which to an officer's experience is something someone may do in order to better grip a weapon all of this in the context of a nighttime stop gave officers more than a mere hunch that the defendant was armed and dangerous i'm happy to answer any of the court's questions otherwise i will turn to reasonable suspicion the totality of the circumstances analysis which this court as the supreme court has emphasized repeatedly is the starting point for that analysis and so let me ask you the officers testified that the department had this unconstitutional policy of frisking all detained people exiting vehicles how do we know that given that policy that these other reasons asserted by the officers weren't pretextual well first your honor and i want to refer to the record at er 27 and 28 that's when there's this discussion about this policy versus procedure in the testimony there is nothing in the record that says there is a written police policy that officers abide by in order to conduct these counsel there's they testified there was a policy it doesn't it's irrelevant whether it's written or or spoken well your honor they testified that it was procedure that they learned but which the district court highlights in the record at er 210 it's not it's irrelevant that this policy does or doesn't exist which is unclear if that is exactly the sfpd official policy but it's irrelevant as long as reasonable suspicion is satisfied which the district court found in the analysis the context of this traffic stop occurred at night this court has accepted that traffic stops are inherently dangerous and as officer leach testified they are even more dangerous in the context of nighttime it's hard to see what's going on in the vehicle but along with the nighttime traffic stop there are these furtive movements i would like to point out in the record that yes um as counsel has pointed out the the court did indicate that there was some exaggerations about the motions um however the court specifically stated in the record at 210 that excuse me er 210 that there were exaggerations but there were some furtive movements the court specifically said that there were still some furtive movements and looking at officers sorry i thought i heard a question looking at officer leach and officer gomez's testimony they talk about hands in the lap they talk about the defendant having his hands by his thighs reaching towards the floorboards and then officer uh gomez taps the window which is seen in body cam and is flagged by uh judge also in his opinion about uh reasonable suspicion that obviously something's going on here officer gomez is tapping on the window but even after officer gomez has tapped on the window to indicate to the defendant to stop doing whatever it is that he's doing when officer glenn arrives on the scene officer glenn observes that the defendant is looking around and that's in the record at 133 and 134 the defendant is looking around he's on his cell phone he reaches towards the console and shakes a bottle and officer glenn also notes that the defendant is profusely sweating and this stood out in particular to officer glenn because it was a cold night so he's sweating it's and then these fissioning motions that aren't just one or two things but then officer glenn observes that the defendant wiped his palms which an officer glenn's experience which is again in the record at er 132 this was something that a suspect might do in order to get a better grip on a weapon further in conjunction with all of those movements the defendant also once boarded the vehicle walks in a way that gave officers suspicion that there may be a fight or flight moment and that is in the record at er 138 139 as well as 111 but this the court even interjects during the testimony at the record at 193 er 193 the court even says watching the body cam footage does give the court itself some idea that the defendant is thinking about doing something whether it's flight or whatever the officers are testifying to there is something there that the court felt the need to pull to talk about that so in conjunction with the fact that this is a nighttime stop there are several furtive movements and there's also drug involvement here when officer leach approaches the defendant right at the beginning of the stop officer leach observes smoke emanating from the vehicle and when officer leach sees this he also smells burnt marijuana and this is in the record at er 21 he then asks the defendant what you know what was that what's going on are you smoking marijuana is that is that what's happening here and according to officer leach's testimony the defendant shows officer leach a marijuana cigarette and refers to it as a joint and that's in the record at er 29 but on this point about the marijuana officer leach smells the marijuana he smells the burnt marijuana he sees the the joint but then officer gomez who was on the passenger side of the vehicle where the window is rolled up also smells the marijuana and officer gomez even described it as a strong odor and that's um in his declaration at er 219 but then after backup arrives officer glenn arrives minutes later and he still smells this odor of marijuana so this is a pungent odor so the court notes that the officers investigating whether or not this is personal use whether or not this is possession versus trafficking the officers in the midst of that investigation on scene does indicate that there could be drugs as well as gun possession as those two things go together and that's in the court's opinion at two at er 210 but courts have found that drugs and guns do often go together and so on top of having all of the factors that i just mentioned the furthest movements it's a nighttime stop officers are unable to see what the defendant is grabbing when he's reaching towards the floor boards and things of that nature officers also observe that the defendant has a criminal history a violent criminal history and a recent criminal history officer leach testifies in the record at er 23 and 26 that this was a 2016 conviction this stop occurred at 2000 in 2018 so it's a recent conviction and also the defendant received an eight-year sentence for an assault with uh likely to um occur great bodily injury so this is a violent criminal history and it's a recent one and in fact the court stated in its uh ruling in the record at er 210 to 211 that this was a significant factor because the fact that this defendant was recently convicted and for a violent crime means that he in particular is more dangerous than just someone any old person driving on the street your honor i see that there are uh no questions um i but reiterating by my point with all of these together the court has ruled that the court below ruled that that was more than a mere hunch and was less than a fair probability which is all that is required for reasonable suspicion and so if there are no further questions i respectfully ask this court to affirm i have a question is a finding that uh this area was a high crime area a critical to your argument no your honor in fact um the the court below didn't even reach the high crime area finding because in uh judge also found that there was enough with just the factors that the government has listed to the court uh today that there was no need to reach it um while the government still contends that it was a high crime area there was enough reasonable suspicion uh without it your honor can you explain the inevitable discovery and the suppression balancing argument um for the district court no your honor if you look in the record at fer 30 the government specifically talks about inevitable discovery in its briefing now it did not reach that argument during oral argument which is not required for waiver but also it didn't reach it because the court found reasonable suspicion so the inevitable discovery argument is briefed um in fer 30 but to go further into that point i one would like to highlight that officers had probable cause to search the vehicle and in the record at er 125 the parties do not dispute that and the court indicates that it agrees that there that probable cause existed to search the vehicle inside the vehicle once officers searched it there are three unsealed bags of marijuana a jar of marijuana as well as a pipe with suspected methamphetamine residue on the pipe so those three factors show that not only could officers have arrested the defendant but a reasonable officer would have considering that this is not just marijuana possession at this point we now have this pipe with suspected uh methamphetamine residue on it and so because they could have and likely would have the um the good they then would have searched the defendant and incident to that uh a search because of the arrest would have also discovered the loaded firearm your honor thank you counsel thank you um mr uh parkman um i'll give you a couple minutes for your honor thank you your honor i will touch on three points one the name of the discovery doctrine uh government council argued that they likely would have searched uh mr ganados that's not enough for the standard the the discovery doctrine specifically says there must be no speculative elements so that's speculation that forecloses it also uh mr ganados argued below in the district court that the search of the vehicle did not was not legal uh and because the government in its answering brief only did not not go that route uh we just did not challenge it because the gun was not the fruit of the search of the vehicle uh next i'd like to just the marijuana and the assault uh now there's a stub of a marijuana cigarette in the ashtray of uh and what the officers offered was this faulty syllogism that a little bit of drugs means more drugs means a gun that's contrary to this court's decisions in ramirez versus city of buena park and thomas versus dillard where this court held that drug use is not indicative of a weapon and united states versus iv which said that while drug dealing is there has to be some evidence of a drug transaction and especially egregious here where the substance is legal in san might be available if it was an illegal substance that a person had to buy from a drug dealer is completely absent when it's marijuana in san francisco uh so the court's reasoning was wrong there this court should step in i just feel it's necessary to clarify that marijuana remains illegal under federal law well i think the reasonable analysis looks at what's the situation on the ground and in san francisco uh it's no longer this shadowy activity it's so there's no inference that marijuana in san francisco under the fourth amendment's reasonable analysis leads to an influence on a gun and the last piece is the self-conviction i'll just quickly mention that it was not for a crime that involved uh the self-conviction does not indicate that mr ganados had a weapon because it's not a crime that needed to involve a weapon and there's no particularized analysis like uh in the united states versus torres which both parties discussed the 10th circuit case um and with that i'll just finish by saying that the first was illegal exclusionary rule applies and this court court should reverse the judgment of the district court all right thank you very much council united states versus granados will be submitted
judges: WARDLAW, IKUTA, BADE